GEORGE W. BAKER & SONS v. LOVORN.
(No. 10484.)

(Court of Civil Appeals of Texas. Fort Worth.
Jan. 26, 1924. Rehearing Denied March 8,
1924. Writ of Error Refused April 30, 1924.)

1. Contracts ⟨⟩236—Unexecuted contract may be changed at will of parties.

Unexecuted contract may be changed at will of parties.

2. Estoppel ⟨⟩78(1)—Sellers guaranteeing sale of cotton seed held estopped to assert lack of consideration for guaranty.

Where, after countermand of order for cotton seed, sellers urged acceptance and agreed to take back unsalable portion, and where both parties proceeded during whole selling season to act under such agreement, sellers were estopped to raise the question of lack of consideration for such guaranty.

On Motion for Rehearing.

3. Sales ⟨⟩89—Guaranty of sales of cotton seed held supported by sufficient consideration.

Agreement by sellers of cotton seed, after shipment and attempted countermand by purchaser due to mistake in amount ordered and decline in market rendering contract oppressive, to aid in resale and to take back unsold portion at end of season, acted upon by parties and recognized in their correspondence, held supported by sufficient consideration.

Appeal from District Court, Knox County; J. H. Milam, Judge.

Action by W. J. Lovorn against George W. Baker & Sons. Judgment for plaintiff, and defendants appeal. Affirmed.

Fitzgerald & Hatchitt, of Wichita Falls, and Chas. L. Black, of Austin, for appellants. D. J. Brookreson, of Benjamin, for appellee.

Conclusions.

CONNER, C. J. [1, 2] We do not see our way clear to disturb either the court's findings or his judgment. In cases where the contract is executory, i. e., not fully executed, parties may, it is conceded, change or alter their contracts at will, and there is evidence in this case at least tending to show that the contract under consideration was not in fact fully completed at the time appellants executed the guaranty declared upon. It is true that the contract by its terms provided that delivery was to be made on the cars at Lockhart, but the accompanying provision that the draft should be attached to the bill of lading for the purchase price, coupled with the known custom of the carriers to demand possession of the bill of lading before delivery, at least tends to show that it was not the purpose of appellants at the time of the execution of the guaranty that delivery of the cotton seed to appellee

should be fully completed until payment of the draft attached to the bill of lading. It is to be remembered that while appellants had the right to stand upon the contract of sale as written at the time of the receipt of appellee's letter countermanding the order, they nevertheless could waive such right, and, as it seems to us, the intent to do so was manifested not only by the terms of the written guaranty but by the correspondence between the parties continuing for months thereafter. In this view of the case, it would be unnecessary, in order to sustain the judgment, that a consideration for the guaranty be proven, for it is undisputed that thereafter the appellee, and at least apparently appellants, acted upon the assumption that the future action of the parties should be controlled by the terms of the guaranty, thus presenting the element of estoppel. See 40 Cyc. pp. 261, 263.

If, however, we should adopt the theory of appellants that the contract of sale had been fully completed at the time of the execution of the guaranty, and that hence the guaranty is without support in the absence of a consideration, yet it is not by any means clear that the evidence in this respect is insufficient to support the court's findings that there was a consideration for the execution of the guaranty. Without an analytical review of the cases, we think the following, when applied to the evidence in this case, tend to support the court's finding of a consideration, to wit: Teague v. Am. Natl. Ins. Co. (Tex. Civ. App.) 215 S. W. 131; Bell v. Self (Tex. Civ. App.) 210 S. W. 304; Nations v. Williams (Tex. Civ. App.) 203 S. W. 1176; Hinton v. D'Yarmett (Tex. Civ. App.) 212 S. W. 518; Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442.

We conclude that the trial court's findings should be adopted, and the judgment affirmed.

Findings and Conclusions of Trial Court.

At the request of the defendants, by and through their attorneys, the court makes and files the following findings of fact and conclusions of law, which constitute the basis of its judgment rendered in the above cause at a former day of the above term.

Findings of Fact.

I find:

(1) That on or about the 30th day of July, 1920, the plaintiff, W. J. Lovorn, placed an order with defendants' agent for 2,000 bushels of cotton seed, to be shipped on or about October 1, 1920, for which he was to pay $3.75 per bushel, delivered at Goree in Knox county, Tex.

(2) That plaintiff intended to order only one carload of seed, but through a mistake as to the number of bushels required to fill a car, he ordered two carloads of seed.

(3) That after such order was placed, and before the date mentioned for delivery of the

seed, market values and conditions general so changed as to make the contract oppressive upon the plaintiff, and he saw he could not sell the seed for the price agreed upon, if at all, and wrote defendants countermanding his order.

(4) That after such countermand was received by the defendants, they wrote the plaintiff the letter pleaded by plaintiff as follows:

"Lockhart, Texas. Oct. 4, 1920.

"Mr. W. J. Lovorn, Goree, Texas—Dear Sir: Referring further to your order for two cars of our Kasch Pedigreed seed, want to advise that as the seed have been shipped, we feel that you are due us some consideration, and we are therefore asking you to take up drafts promptly, and upon arrival of the seed, take them out and store them, selling all you possible can, and a little later we will put a man in your territory to help you place the balance.

"If you will grant us these favors, we will guarantee to you no loss in the deal, for as stated above, we will help you sell them, and in the event we cannot place all of them, we will take them off your hands, but we must ask that make arrangements with your bank to take up drafts promptly. Thanking you in advance for these favors, we are

"Yours very truly."

(5) That on September 27th and 28th the defendants shipped the two cars of seed from Lockhart, Tex., to plaintiff at Goree, Tex., and sent bills of lading therefor, with drafts for $6,700 to the First National Bank of Goree, Tex., and the two cars of seed arrived in Goree on October 2, 1920, and were unloaded and stored in warehouse for plaintiff by Drayman Roberts on October 4th and 5th and before the plaintiff received the above letter.

(6) That on October 11, 1920, the plaintiff went to the First National Bank of Goree, and, as an inducement for credit, told the bankers the contents of said letter and of his guaranty against loss therein, and procured a loan from said bank, paid the $6,700 draft, and the proceeds of same was sent to the defendants by said bank on said October 11, 1920, and plaintiff left said letter with the bank.

(7) That plaintiff at once procured insurance on said seed at a reasonable and necessary cost of $71 per quarter, and, paid a total sum of $426 for such insurance, and that such was a proper and necessary precaution against loss.

(8) That plaintiff acted upon said letter and used due diligence in trying to sell the seed, and sold and used himself $221.10 worth, and incurred and paid a necessary and proper expense of $32 in so doing.

(9) That the defendants also relied and acted upon said letter, and treated their contract as governed thereby, as shown by their several letters copied in plaintiff's original petition, all through the cotton seed season, and up until the spring following, but failed to assist plaintiff in selling out same, and at the close of the season refused to take the seed off of the plaintiff's hands, or otherwise protect him against loss on said seed.

### Conclusions of Law.

1. I conclude as a matter of law that the guaranty given by the defendants being in writing, it imports a consideration, and the evidence showing that the plaintiff relied upon same at the time he procured and paid the $6,700 pur-

chase money for the seed, and that both parties treated same as governing their agreement during the entire season, the plaintiff paying the expenses of caring for the seed, and trying to sell same, such evidence fails to show a want of consideration for the guaranty, and that defendants are bound thereby.

2. I further conclude as a matter of law, the plaintiff having entered into the agreement to purchase the seed under a mistake by which he ordered two cars instead of one, and the conditions having changed to such an extent as to render the agreement oppressive upon him, this would bring the case within the rule laid down by our Supreme Court under which the novation in the contract would not require a new consideration, and that defendants are bound thereby.

### On Motion for Rehearing.

CONNER, C. J. [3] The questions in this case are difficult and have been presented forcibly in behalf of appellants by their able counsel, and we are by no means sure that we can materially add to the conclusions and implications of our original opinion. We will, however, briefly present a view not heretofore specifically referred to, to wit: If it be admitted, as is so ably and forcibly urged in behalf of appellants, that the original contract of sale was in all particulars fully executed prior to the execution of the new agreement upon which appellee declares, and that hence in order for the new agreement to be enforceable it was necessary that it be supported by a consideration, and further that a consideration m ist also be shown for the waiver of the original agreement on appellants' part, if any, and that the principles of estoppel are not herein available to appellee for want of pleading, it nevertheless appears, inferentially at least, from appellants' letter attempting to cancel their original order, as also from evidence presented on the trial, that between the date of July 30, 1920, when the order for the seed was executed, and the date of the attempted cancellation, to wit, September 27, 1920, that because of a failure in crops and a consequent inability to sell the cotton seed in question to those whom both parties knew they were to be supplied, the enforcement of the original contract would be oppressive because of the changed conditions. If so, and both parties with knowledge of the changed conditions assent to a modification of the original agreement, then, at least by some of the authorities, there is a sufficient consideration to support the modified contract.

It may be said that this principle has not yet been very clearly defined in our decisions, but it is distinctly recognized in some of them at least. For instance, the case of City of Galveston v. Galveston City R. Co., 46 Tex. 435, was one in which by the terms of the contract between the city and the railway company the latter was required to

"construct and keep in good repair all cross-culverts, whenever the same may be required under their rail tracks," and the city, among other things, alleged that in this particular the railway company had defaulted to the damage of the city. Upon this phase of the case the Supreme Court had this to say:

"While the company was required by the original contract to construct and keep these culverts in repair, they were subsequently relieved by the city from this undertaking, by an ordinance, in almost as plain and unmistakable terms as the original contract. That such is the obvious import of this ordinance, is not denied by counsel for appellant. It is insisted, however, that it is inoperative and void for want of consideration. But if we were to concede that the city received no valuable consideration for it, we do not perceive how it could affect this case. Certainly the city, if it saw fit to do so, might release the company from the performance or fulfillment of an undertaking such as this, which, at the time of the release, was altogether in futuro, and upon which, therefore, there had been no default. If a contract has been obtained by mistake, or if, through change of circumstances, it is deemed to operate oppressively, an agreement to make an additional compensation, or to annul or modify it, is not, as is well settled, invalid for want of consideration.' (1 Dillon on Municipal Corporations, § 398.)"

In Foley v. Storrie, 4 Tex. Civ. App. 377, 23 S. W. 442, by the Austin Court of Civil Appeals, the plaintiff agreed to deliver to the defendant so much wood, at an agreed price per cord, by April 1st. On March 28th the plaintiff wrote to defendant that in view of the wages he had then to pay, he must ask for a better price for the wood. The defendant answered that he would pay him a certain advanced price per cord, and requested him to hurry his shipments. It was held that the modification of the contract was not without consideration.

In the case of Washington Life Ins. Co. v. Reinhardt, 142 S. W. 596, by the Dallas Court of Civil Appeals, it was said, among other things, quoting from the headnote, that—

"Where, owing to new legislation, by mutual understanding between a life insurance company and its general agent, it gives up its business in the state, and he loses the profits on business which he would have written had it remained in the state, and agrees that for renewal premiums thereafter contracted by the company on policies theretofore written by him his commissions shall be a certain amount less than stipulated in their antecedent contract, such new contract is supported by sufficient consideration."

In Hinton v. D'Yarmett, 212 S. W. 518, by this court, it was held that where an owner of oil leases assigns shares of stock and his interest in certain oil leases in consideration of assignee's agreement to drill a test well, and purchaser from assignee of an interest in the contract assumes obligation of drilling well, but after commencing work refuses to continue, whereupon the contract is modified so as to permit owner himself to drill well with equipment furnished by such purchaser, the preceding contracts and proceedings constitute a sufficient consideration for modified contract.

In the case of Ross v. Moore, 191 S. W. 853, writ of error refused, this court held that where a broker and owner entered into a contract to subdivide and sell lots at a certain price and for a certain commission, the fact that the lands were not being sold as rapidly as desired was a sufficient consideration for an oral modification of the written contract in order to facilitate the sales.

In Cooper v. McIlwain, 58 Ala. 296, it was said:

"There can be no doubt that the parties to a contract may rescind or modify it, at [their] pleasure; and their mutual assent is all that is necessary to support the modification or rescission."

There was evidence in this case tending to show that the cotton seed in question were of an improved variety, priced above that of ordinary varieties, and that appellants were desirous of having them introduced in the section where appellee was engaged, and that with full knowledge of the fact that they had theretofore in accordance with the written order delivered the cotton seed upon the cars at Lockhart and thus, as appellant now insists, fully completed the contract on their part, they voluntarily executed the written modification of the original contract upon which appellee acted. Thereby appellants thus immediately secured the case price charged for their seed, avoided possible costs and delays in prosecution of other remedies, and endeavored to establish a market in new territory for their product. Appellee on his part accepted the modified agreement and acted thereon by paying interest above its legal rate in order to at once supply the purchase money; he stored the seed as directed, insured them, and made special effort to sell them, as he might not have otherwise done.

So that we conclude, on the whole, that there was a sufficient consideration for the modification of the contract, and the motion for rehearing will, accordingly, be overruled.