**J. L. HICKS et al., d/b/a Hicks Construction Company, Appellants,**

v.

**Roger SMITH, Appellee.**

No. 16050.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 11, 1959.

Rehearing Denied Jan. 15, 1960.

Bedford D. Edwards, Waco, Bullington, Humphrey, Humphrey & Fillmore, and Roy Schaeffer, Wichita Falls, for appellants.

Cletus C. Schenk, and Geo. W. Anderson, Wichita Falls, for appellee.

MASSEY, Chief Justice.

This case is one in which Roger Smith, as plaintiff, sued the partners doing business as Hicks Construction Company to establish a contract and enforce performance thereunder on the part of the defendants. Trial was to a jury and upon answers of the jury which established the contract and its provisions, the trial court entered a judgment predicated upon jury findings coupled with other facts judicially found.

Appeal was taken from the adverse judgment by the defendants, based upon their contention that there was no evidence, or insufficient evidence, to show any consideration for the contract declared upon by the plaintiff, and that there was no evidence or, in any event, insufficient evidence to show that the parties had mutually agreed thereto.

Judgment affirmed.

The contract declared upon was essentially a modification of one previously existing between the parties. The defendants stood upon the original contract, the terms of which are not in dispute, but which, as between plaintiff and defendants, we believe would be subject to construction. The original contract between the parties was an oral one predicated upon a "base" contract in written form entered into between the defendants, as general contractor, with the City of Wichita Falls. To this contract plaintiff was not a party. By the contract between plaintiff and defendants, a part of the obligations assumed by the defendants

under the "base" contract was subcontracted and assumed by the plaintiff.

In said "base" contract the defendants had certain natural rights which they contracted not to assert against the City even should they have cause to do so. Specifically, as applied to this case, the right yielded up was that of contesting and refusing to comply with the determination of any question by a person specified as the "Engineer" as to the amount and quantity of the kinds of work the defendants were (primarily) obliged to perform under the "base" contract. Defendants' agreement was that they would abide by the Engineer's determination of all questions in relation to work performed under the contract, etc. In connection therewith the defendants were given the right under the "base" contract to claim additional compensation on account of any increase in the work as the result of any order or decision of the Engineer, the right to be secured and preserved through the filing, within thirty days after receipt of such an order, of a written protest. In resolution of such question, determination of the defendants' rights, if any, would be through an arbitration.

It will readily be seen that the plaintiff, under and by reason of his original oral contract with the defendants, received no rights as against the City of Wichita Falls in the event of some decision by the Engineer which in his opinion was not within the provisions of the "base" contract, or, in turn, under his original contract with the defendants. This is so because no provision of the "base" contract contemplated any such right on the part of any subcontractor. We must, therefore, give some consideration to what the situation would pose in the matter of rights, if any, of the plaintiff against the defendants should the Engineer make a determination and direct that certain work be performed by the defendants in the execution on the part of the "base" contract which defendants had subcontracted to the plaintiff, if and in the event the plaintiff might contend such

was not within the contemplation of either the "base" contract or his original contract with the defendants. In such a case it would appear that the defendants, even should they share plaintiff's belief and interpretation, would be obliged to proceed in accordance with the Engineer's decision. Of course, they could preserve any right to complain and to contend on their own behalf for a greater compensation than that they had agreed to accept when they entered into the "base" contract. But what of the rights, if any, of their subcontractor, the plaintiff, especially when there was a complete absence of agreement by plaintiff and defendants as to plaintiff's rights in the event of such contingency?

Such was substantially the situation which resulted in this suit by plaintiff against the defendants. A substantial part of the contract made between plaintiff and the defendants (by which plaintiff assumed part of the obligations of the defendants under their "base" contract with the City) required the plaintiff to drive piles as the foundation for the erection of a structure or structures. In the "base" contract it was estimated that the piles would be driven approximately twenty-five (25) feet into the ground to a firm foundation therefor. After being so driven it would be necessary that some part of the ends remaining above ground be cut off in such way that the tops would be even with one another in simplification of subsequent structural work. The contract further provided that some "test piles" would be driven prior to determination of the proper length of piles. From the information thus secured, piling of the proper length would be used.

In arriving at the contract between plaintiff and defendants, the parties, knowing how many locations there would be at which piles would be driven, and hence knowing the number of piles, estimating the depth into the ground each would be driven, and also estimating the length which would be necessary to be "topped

off" of each pile, agreed upon a calculable figure as plaintiff's consideration. Plaintiff would receive from the defendants, as consideration, a certain amount for each foot of piling driven into the ground, and a certain amount for each foot of piling "cut off".

Upon beginning the work under the contract, the "test piles" were driven. Plaintiff was very disappointed to find that bedrock was reached when the test piles had been driven only approximately nine (9) feet into the ground. Understandably, this meant that instead of computing his compensation under the contract on the basis of driving each pile approximately twenty-five (25) feet, it would be computed on only a little better than one-third that number of feet. The "Engineer", who had the right of determining all questions in relation to the work, at least in so far as the defendants were concerned and under the "base" contract between defendants and the City, then made a decision as contemplated under said "base" contract. He directed that thirty-five (35) foot lengths of piling be purchased and used, and that each of said long lengths be cut into three sections, about twelve feet long or slightly less, and the sections driven. Compliance was requisite in order to constitute a performance of the pile driving portion of the "base" contract. If plaintiff proceeded to perform in accordance with the Engineer's directions, it meant not only that the amount he expected to receive from the defendants would be drastically reduced, due to the fact that piles would be driven only about nine (9) feet into the ground rather than the approximate twenty-five (25) feet anticipated, but his work in the accomplishment was most appreciably increased due to the fact that he would have to cut long piling into sections, then treat the raw ends of the sections cut with creosote before driving them as piles.

A circumstance worthy of note, gleaned by us from the record, is the fact that once a piling is in place and the driving machine ready for the driving operation there is very little more time and energy requisite to the driving of a twenty-five (25) foot pile than would be the case in the driving of a nine (9) foot pile. The time and effort involved in pile driving operations consist primarily in the placing of a piling in position to be driven and the placing of the pile driver in position to drive the pile.

The defendants were also unhappy about the situation. Their own "base" contract with the City provided for a measure of compensation for the pile driving operations like unto that provided in their subcontract with the plaintiff though about 10% greater. Hence, the compensation they expected to receive from the City would be proportionately decreased, just as would that of the plaintiff in the event plaintiff should proceed in an election to treat his contract with the defendants as obliging him to perform despite the situation.

This state of affairs obtained on or about date of March 1, 1956, when plaintiff claims that a new contract was made in respect to the part of the original contract as same related to pile driving, or that a modification was made of the original contract. According to plaintiff, he and the defendants, then and there under the situation obtaining, agreed that defendants would purchase the thirty-five (35) foot lengths of piling and plaintiff would cut them into the three sections and treat the sections so that they would be suitable to drive as piles, and then drive and cut off the same as though they were the piles to be driven under the original agreement. Further, according to plaintiff, defendants agreed that they would seek to secure an increase in the amount of compensation from the City of Wichita Falls because thereof, over and above the amount provided in the "base" contract, and if allowed by the City such increase would belong to plaintiff, but if disallowed by the City the plaintiff would not claim of the defendants any increase in the amount of his compensation. In other words, he would, in the event the City refused defendants any additional compensa-

tion, be entitled only to that compensation provided to be paid under the original contract.

In answer to a special issue substantially submitting inquiry as to whether the parties in fact agreed as set forth in the foregoing paragraph, the jury found that they did so agree. The form of the special issue so submitted was not objected to by defendants. Based upon the answer of the jury to said issue, and on other evidence standing undisputed in the record, the trial court entered judgment in favor of plaintiff and against the defendants in the amount of the increase allowed by the City of Wichita Falls, plus legal interest from the date of the judgment.

■ Without detailing the evidence in the record, we have concluded that there was an issue of fact made in the evidence as to whether the parties did agree as aforesaid, and at the time and under the circumstances described. It was proper, therefore, that the issue be resolved by the jury, and we are bound by the same as it was so resolved.

■ Immediately prior to the time said agreement was made, there had been nothing done by either of the parties, as applied to the severable part of their contract relating to the pile driving, other than the driving of the test piles. Under such circumstances, we believe that such severable part of the contract would be properly considered as wholly executory. Although, under and by reason of the circumstances, the defendants having assented to the "basic" contract with the City and being bound thereby as a party thereto on account of the contractual proviso which required them to proceed despite any contention that said contract did not cover a requirement that they do so,—we do not believe that plaintiff was necessarily likewise bound by a duty to proceed under his original contract with the defendants. But for defendants' obligations under the "basic" contract it might be said that under such circumstances they would have been able to have refused to proceed to perform as directed by the Engineer, or to have been entitled to rescind the "basic" contract. See 10–A Tex.Jur., p. 467, "Contracts", sec. 226, "Rescission by One Party", and p. 380, sec. 188, "Exceptions and Provisos". There is evidence in the record indicating that the defendant who was present and who made the agreement was at the time of the opinion that the requirement of the Engineer was over and beyond and outside the proper scope of the requirements of the "basic" contract. At least, a fact issue would have been made in any suit which might have arisen between the defendants and the City of Wichita Falls, except for the presence of the proviso aforementioned. 10–A Tex.Jur., p. 362, "Contracts", sec. 179, "Construction by Parties".

With the same opinion as said defendants on the part of the plaintiff, as applied to the latter's original contract with the defendants, we would have the same situation as might be said to have existed between the defendants and the City, except it was one which obtained only as between plaintiff and the defendants, without complication by the proviso. We believe that the plaintiff was not bound by the proviso in the "basic" contract, no right having accrued to him either through its insertion, or reserved to him as protection against any unreasonable and oppressive operation to his prejudice.

■ In any event it would be proper to say that the original contract of plaintiff with defendants would be subject to construction, and, if it be not correct to say judicially that plaintiff was not bound to proceed (in his performance for defendants) as the Engineer directed, it would certainly be correct to say that said contract is ambiguous or its meaning is doubtful, warranting receipt of parol evidence by which a construction would be for the jury. 10–A Tex.Jur., p. 405, "Contracts", sec. 198, "Construction by Court or Jury". As between plaintiff and defendants, the original contract would be one as to which, in

effect, the language should be considered as having been chosen by the latter, and especially since it might be said that there was an exemption from liability therein under the theory that the plaintiff waived right to contend that action required of him was not covered thereby. Under this theory, construction in a trial court in favor of plaintiff would be upheld. 10-A Tex. Jur., p. 335, sec. 169, "Construction in Favor of One Party". Since under the rules of law the courts would avoid, where possible and proper, a construction which is unreasonable, inequitable or oppressive, a lower court's construction in favor of the plaintiff would be upheld. 10-A Tex. Jur., p. 384, sec. 191, "Avoidance of Illegal, Inequitable, or Oppressive Construction". We have already noticed the evidence to the effect that the construction placed on the "basic" contract by defendants themselves, or at least by the one present at time the difficulty arose, was that the requirement made by the Engineer was outside the scope of that contract.

The defendants point out that the record shows that plaintiff never at any time refused to perform under the original contract. In this the defendants found their contentions relative to consideration for modification. We observe no benefit to be claimed by defendants because plaintiff did not affirmatively rescind. If he could have done so, or if the circumstances were such that his right to rescind, etc., could have been an issue to be tried, then it is certain that he could make a new contract with defendants pursuant to which he waived rights in such respect, whether they were first asserted or not, and the consideration therefor would legally be the same in either case.

 At time of the parties' agreement, on or about March 1, 1956, it appears that in the making of the new agreement, or modified contract, plaintiff yielded up his probable right of forbearance to perform under the original contract as the Engineer had directed the defendants to perform under the "basic" contract. Certainly such forbearance on the part of plaintiff, had he refused to proceed, would have been of a definite and substantial character, and the defendants' promise, made as a part of the new agreement for the first time, to apply for an increase in compensation and if received to deliver it over to plaintiff, was a promise which defendants should have reasonably expected would induce plaintiff to proceed to drive the piles as directed by the Engineer. Injustice could be avoided only by the enforcement of such promise on the part of the defendants and, therefore, the jury having found the promise to have been made, plaintiff was entitled to recover. Restatement of the Law, Contracts, p. 110, sec. 90, "Promise Reasonably Inducing Definite and Substantial Action"; 10-A Tex.Jur., p. 442, A. "Modification", sec. 216, "Sufficiency of Consideration". The general rule is that whatever consideration a promisor assents to as the price of his promise is legally sufficient consideration, so there would be no question but what the defendants' promise, found to have been made, was sufficient for the plaintiff. Restatement of the Law, Contracts, p. 92, sec. 81, "Adequacy of Consideration". See Foley v. Storrie, 1893, 4 Tex.Civ.App. 377, 23 S.W. 442; Teague v. Edwards, Tex.1958, 315 S.W.2d 950. Even had the new agreement amounted only to a unilateral contract, it is noted under Illustration 8, p. 86, sec. 76, of said Restatement, that "If unforeseen difficulties justifying A in rescinding the contract exist, there is sufficient consideration for a promise of additional payment," though it be a case where A contracts with B to build a house according to certain plans, for a stated sum which B agrees to pay, and when the work is half done A, upon discovering that he will lose money in performing as agreed, informs B that the work will stop unless additional money be promised for completion, and upon B's agreeing so to pay A proceeds to complete the construction.

 Without regard to the question of want of mutuality in the contract, which

we do not find to have merit, the defense contended for by defendants would be of no avail for the reason that the contract has been wholly performed by the promisee plaintiff. Even though it might properly be said that the defendants' promises were at one time not binding upon them, when the plaintiff, as the promisee, engaged to do the work required of him by the new agreement, there then became a mutuality of obligation, and the defendants, as promisors, became bound. 10–A Tex.Jur., p. 321, "Contracts", sec. 164, "Effect of Performance". Certainly the parties had the power to modify their existing contract by altering, excising or adding provisions. 10–A Tex.Jur., p. 433, sec. 213, "Modification Generally".

■ We have already mentioned the fact that the trial court allowed the plaintiff interest calculated from the date of the judgment rather than from an earlier date, which we gather from the record to have been the date of plaintiff's demand. By cross-assignment of error, plaintiff complains of this and seeks reformation so that the date from which he will be entitled to collect interest will be advanced. While we might be inclined to agree with plaintiff in this contention had the defendants received the amount to which plaintiff has been found entitled on or prior to the date plaintiff made demand therefor (see 25 Tex.Jur., p. 20, "Interest", sec. 14, "Commencement of Interest"; 42 Tex.Jur., p. 768, "Trusts", sec. 148, "Ascertainment of Value-Interest"), we cannot agree under the circumstances of this case. The litigation over the controversy began with the City of Wichita Falls filing suit as a "stakeholder" of funds claimed by both plaintiff and defendants. Subsequently, the exact amount in controversy between plaintiff and defendants was judicially established and the City paid such amount into the registry of the court and was dismissed as a party to the suit. The City was not brought forward by the appeal taken and is not interested in its outcome. Perforce the judgment in the case, as between plaintiff and defendants, the former became entitled to the money at time of its entry. In view of the appeal taken, the amount over which the parties are litigating remains in the registry of the trial court. No part of plaintiff's cause of action is based upon tort. Plaintiff requested no special issues, answers to which might serve as a foundation for a claim to have interest begun on a date prior to that of the judgment. Under these circumstances, that part of the judgment which decreed legal interest on the amount owing properly dated from time of the judgment.

■ By another cross-assignment of error the plaintiff complains because the trial court refused to decree judgment in his behalf for attorney's fees, under Vernon's Ann.Texas St., Art. 2226. The article provides that "Any person having a valid claim * * * for personal services rendered, labor done, * * * or suits founded upon a sworn account or accounts, * * and he should finally obtain judgment for any amount thereof * * *, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney." We agree with the trial court that this is not such a case as is covered by the provisions of the aforesaid article. Although plaintiff purportedly bolstered his case by pleading a sworn account as a part of his cause of action, we do not believe his suit met the tests in a determination of whether it was a suit on account. Meaders v. Biskamp, Tex. 1958, 316 S.W.2d 75. Except for the fact that the defendants had never received the excess amount which the City had agreed to pay, plaintiff's suit partook of the nature of one brought about through a breach of trust, and constituted one to either enforce the trust or secure damages because of a breach of trust. His suit was not to recover for personal services or labor in a proper sense, for such a suit is necessarily predicated upon the premise that there is entitlement to compensation by express or implied contract or in quantum meruit, in return for the consideration of services or

**648**

labor. Here plaintiff's right to recover could not be said to obtain because of agreement that he receive anything other than such amount, if any, which might be allowed by the City (to the defendants) as additional compensation. We believe his action was to enforce the rights he owned under the contract upon the coming into existence of the City's obligation to pay such excess. This was the contingency upon which any right of the plaintiff depended, and its occurrence could not have created in the plaintiff either the right to bring suit for the enforcement of any contract to pay for personal services or labor, nor a suit for damages because of defendants' breach of contract to pay for such.

Judgment affirmed.