### FERRIS et al. v. HUFFMAN.
### (No. 681—4234.)

(Commission of Appeals of Texas, Section A. June 27, 1925.)

1. **Vendor and purchaser ⊝⟿253—Purchaser of oil lands not bound by recital in deed reserving vendor's lien.**

Where land was purchased for $10,000, and $8,000 paid in cash, the balance to be paid from the first oil produced and saved from land, and no note was given for the balance, nor date fixed for its payment, purchaser *held* not bound by reservation in deed of vendor's lien to secure payment of the note which in fact had never been given; reservation of lien probably being merely form in deed, which had not been altered to fit circumstances.

2. **Vendor and purchaser ⊝⟿79—Purchaser not bound to pay balance under contract, unless oil was found.**

Where only value of land was prospect of oil thereunder, purchaser, who paid certain sum in cash, with agreement to pay balance from first oil produced and saved, and made honest and substantial effort to develop land for oil, but failed to find any amount thereof, *held* not liable for additional sum, notwithstanding reservation in deed of vendor's lien to secure note recited consideration as given, but which had never been executed.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

---

⊝⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit by W. F. Huffman against Phillip Ferris and others. Judgment for defendants was reversed in the Court of Civil Appeals, and defendant Ferris and another bring error. Judgment of the Court of Civil Appeals reversed, and that of trial court affirmed.

Kay, Akin & Kenley, of Wichita Falls, for plaintiffs in error.

Buel R. Wood, of Los Angeles, Cal., and Engelking & Dotson, of Electra, for defendant in error.

CHAPMAN, J. W. F. Huffman, hereafter referred to as plaintiff, brought this suit in one of the district courts of Wichita county against A. Peterson and Phillip Ferris, hereafter referred to as defendants, to recover 80 acres of land. Other parties were also made defendants in the suit. Plaintiff alleged that A. Peterson was the owner of the land by mesne conveyances, and the record shows that Phillip Ferris had been assigned the interest of the lessee in an oil and gas lease. The land was sold on the 13th of October, 1919, by one J. A. Fisher to A. Bruce Bielaski, for a consideration of $10,000 paid and secured to be paid as follows: $8,000 cash in hand paid by the said A. Bruce Bielaski, the receipt of which is hereby acknowledged, and the further payment of $2,000 to be paid out of the first oil produced and saved from the land herein conveyed. No note was given for the $2,000, no date was fixed for its payment, and the grantee did not bind himself to develop the land for oil and gas. The deed provided for the retention of the vendor's lien until the payment of the "above-described note" and all interest thereon, but, as shown, no note was executed. Huffman, on the 12th of January, 1922, bought whatever interest Fisher had in the land for a recited consideration of $10 and other valuable consideration. Plaintiff's prayer was for a cancellation of the deed and leasehold estate, for the restitution of the land, and for a rescission of the contract.

The case was tried without a jury, and judgment rendered by the trial court in favor of all defendants, that plaintiff take nothing by his suit. The judgment of the trial court was reversed by the Court of Civil Appeals of the Seventh District, and defendants A. Peterson and Phillip Ferris made application to this court for writ of error, which has been granted.

The trial court did not disclose in its judgment upon what theory it found in favor of the defendants, and made no findings of fact, and conclusions of law. We think the judgment of the trial court may be upheld upon two grounds: .

[1] First. We do not think that there was an express provision for the reservation of title in the original deed from Fisher to Bielaski; it being stated that the lien was reserved to secure the payment of a note, and, as already stated, no note was given, and it occurs to us that the mention of reservation of title appears in the instrument merely on account of the form of deed used, and that the person who drew the deed failed to eliminate that part of the deed referring to a reservation of the lien to secure the payment of the note. We do not see how any other construction could be placed on the deed, for if it was intended to retain the lien to secure the payment of the amount to be paid in oil, this could easily have been stated in such terms as to show that intention.

[2] Second. The court could, and we think should, have found that the $2,000 was not to be paid unless oil of that value was produced from the land. The facts show that it was the prospect for oil under the land that gave it value, and that without the oil there was very little value to it. The facts further show that lessees of the oil and gas rights began testing the land for oil immediately after the sale, and that oil of the value of $312 was produced and paid on the $2,000 indebtedness, and there were facts from which the court could have found that the lessees continued to explore the land for oil as long as it was found in paying quantities. In the case of Great Western Oil Co. v. Carpenter et al., 43 Tex. Civ. App. 229, 95 S. W. 57 (writ of error denied), a part of the consideration in an oil and gas lease was to pay the sum of $1,000 out of the first money realized from the sale of 50 acres of the land. The court held that no part of the 50 acres had ever been sold, and therefore the $1,000 was not due.

In the case of Harris et al. v. Wheeler (Tex. Com. App.) 267 S. W. 465, in an oil and gas lease, the total consideration was $425,000, $100,000 cash, $50,000 in a note, and $275,000 to be paid out of the production from the lease, and in that case we held that it was the intention of the parties that the $275,000 should be paid by the lessees on condition that the wells produced enough oil to amount in value to that sum. In this case it was the oil that was supposed to be under the land that gave it the value, and the construction that we place on the original deed is that it was the intention of the parties that the $2,000, in addition to the $8,000 cash paid, was to be paid if the land produced enough oil to make this payment. Contracts like the one in this case are very frequently made in oil territory in the selling of land and leases, and in such contracts both parties assume part of the risk as to whether or not the land does produce oil upon being developed.

In the instant case the $8,000 cash paid by the grantee was far in excess of the value of the land, if it did not have any value as oil land, and in the contract between grantor and grantee it appears to us that the grantee was willing to pay the sum of $8,000 unconditionally for a chance at the oil and gas under the land, and that he was willing to pay

$2,000 additional if that amount could be paid from oil produced from the land, and that lessor was willing to accept the $8,000 as a certain and fixed consideration, and that he should receive $2,000 additional only in event the land produced oil of that value. Considering all phases of the case, we are of the opinion that, if lessees made an honest and substantial effort to develop the land for oil and gas, then they did not owe the additional $2,000, unless oil to that value was produced.

We think the trial court was correct in finding in favor of defendants, and recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.